FILED by DR D.C.
ELECTRONIC
August. 26, 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Oscar Andrés,

Petitioner,

vs                                              Crim. No. 98-0076-KMM (3)

United States of America,

Respondents

_____/

## MOTION PURSUANT TO TITLE 28 USC 2255 ¶6 (3) TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**COMES NOW**, Oscar Andres, hereinafter known as petitioner, in pro se forma, respectfully prays this Honorable Court grants the relief seek herein under Title 28 USC 2255 (6)(3). The Supreme Court has established that the 1-year limitation period under ¶6 (3) begins to run on the date on which this Court "initially recognized" the right asserted in an applicant's motion." See, *Dodd v. US,* 545 U.S. 353 (2005); see also, *Alleyne v. US*, No. __ (June 17, 2013). In support thereof petitioner avers as follows:

1- On August 3, 1998, petitioner was found guilty by a jury of Counts One, Two and Three of a four count superseding indictment. Count One charged with conspiracy to import cocaine, in violation of 21 USC 963. Count Two charged with conspiracy to possess with intent to distribute cocaine in violation of 21 USC 846. Count Three charged with using or carrying a firearm in relation to a drug trafficking crime in violation of 18 USC 924 (c). (Docket No. **178**)

1

cat / div 2255/MIAMI
Case # 13CV23069
Judge Moore   Mag White
Motn Ifp NO   Fee pd $ 0
Receipt #

2- The presence report established the petitioner was held accountable for 252 kilograms of cocaine. Since the offense involved more than 150 kilograms or more of cocaine, the base offense level was 38. Under specific offense characteristics the offense level was increased by (2) two points because a dangerous weapon was used during the conspiracy (See, USSG 2D1.1 (b) (1)). Also, a (2) two points were added because a victim was physically restrained in the course of the offense. (See, USSG 3A.1.3) The total offense level was **42**.

3- The district court sentence petitioner to a term of life imprisonment on counts one and two. Also, a five years consecutive sentence for count three with a supervise release term of five years. (Docket No. **211**). Petitioner made a timely notice of appeals to the Eleventh Circuit. On May 5, 2001, the judgment and conviction was affirmed. (Docket No. **237**).

4- It is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read "to raise the strongest arguments that they suggest." This Court recognizes that pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see also, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that the allegations in a pro se complaint are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers.")

5- Petitioner avers that before the sentence was imposed counsel contested the upward adjustments (described above) used to increase his guideline range. (See, Addendum to the Presentence Report filed on October 18, 1998) More so, petitioner contested the amounts of drugs attributed as part of the offense level. (Docket No. 241)

6- As legal authority to support these claims petitioner cited *Apprendi v. New Jersey*, 530 US (2000); see also, *Blakely v. Washington,* 142 S.Ct. 2531 (2004). Petitioner alleged, among others enhancements that the prosecution failed to present the quantity of drugs to the jury.

2

7- In the beginning of the 21st Century the Supreme Court determined the Constitution requires that a fact (other than the fact of a prior conviction) that increases the range of punishment must be charged in an indictment and found by a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490) (Citing, *In re Winship*, 397 US 358 (1970); see also, *Fiore v. White*, US 225,228-229 (2001) (The Due Process Clause forbids a State to convict a person of a crime without proving the crime's elements beyond a reasonable doubt).

8- Later, Justice Thomas, writing for four justices, recognized that the logic of *Apprendi* applied "[w]hether one raises the floor or raises the ceiling" of sentencing ranges, because "it is impossible to dispute that the defendant is exposed to greater punishment than is otherwise prescribed." *Harris*, 536 U.S. at 579 (Thomas, J., dissenting).

9- A month ago, the Supreme Court overruled *Harris*, and acknowledged that under *Apprendi* it "ha[d] treated sentencing factors, like elements, as facts that have to be given to the jury and proved beyond a reasonable doubt." *Alleyne v. US*, ___, 133 S. Ct. 2151 (2013).

10- *Alleyne* established that: "Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt... Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury. Accordingly, Harris is overruled." Slip p. 1

11- The court reasoned that facts which have such a significant impact on the sentence are effectively elements of a distinct, more serious offense and the sixth amendment therefore requires that they be submitted to the jury. Petitioner guideline range was 38 and later was increased four (4) points based on offense conduct not charge in the indictment and not presented to a jury to find beyond a reasonable doubt.

3

12- In a recent decision, *Peugh v. United States*, (No. 12–62.—Decided June 10, 2013), the Supreme Court found that the Sentencing Guidelines are "law" for *ex post facto* purposes and a retroactive increase in the guideline range is unconstitutional. The unanimous court considered procedural rules and empirical data, to find that, though no longer mandatory, "the [guideline] range is intended to, and usually does, exert controlling influence on the sentence that the court will impose." Slip p. 14. Though an increase in the guideline sentencing range does not mandate a higher sentence, it does create a "sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Id*.

13- In overruling *Harris*, the Supreme Court established that *Apprendi* applied to increases in mandatory minimum sentences and held that because a mandatory minimum sentence increases the penalty for a crime, any fact that increases the mandatory minimum sentence is an "element" of the crime that must be submitted to the jury. Moreover, Apprendi jury-trial rights now apply to increases in both mandatory maximum sentences and mandatory minimum sentences.

14- The *Alleyne* decision emphasized that a fact increasing either end of the sentencing range (the minimum or the maximum) produces a new penalty, constitutes an element of the offense, and must be found by the jury, regardless of what sentence the defendant might have received had a different range been applicable. *Id. at 2162*.

15- Petitioner avers that the aforementioned enhancements which included: 1) drug quantity; 2) firearm; and 3) victim related adjustment where not submitted to a jury to prove beyond a reasonable doubt. More so, petitioner guideline range for a criminal history of category **I** was level **38**. Accordingly, under the sentencing guideline table petitioner original guideline range was from 235 to 293 months of imprisonment. Applying the *Alleyne* decision should determine that any increase on the sentencing guideline range outside from the jury verdict contravenes

4

*Apprendi* and should be corrected by the district court.

16- Under the *Apprendi/Alleyne* Sixth Amendment line of cases, because the finding that petitioner 'upward departure from the recommended guideline range was justified" produced an increased penalty for petitioner, it constitutes an element of the offense, which must be found by the jury beyond a reasonable doubt, regardless of what sentence petitioner might have received had a different range been applicable.

17- The Eleventh Circuit has long held: "In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362-63. As the indictment in this case failed to allege drug quantity, Camacho's sentence would be proper only if it met the requirements of section 841(b) (1) (C).

18- Normally, a defendant may obtain re-sentencing under *Apprendi* only if the sentence he actually receives exceeds the maximum allowable sentence he should have received under section 841(b) (1) (C), i.e., twenty years' imprisonment, without regard to quantity. *US v. Gerrow,* 232 F.3d 831, 834 (11th Cir.2000) ("[T]here is no error, plain or otherwise, under *Apprendi* where the term of imprisonment is within the statutory maximum set forth in § 841(b) (1) (C) for a cocaine offense without regard to drug quantity.")." *US. v. Camacho*, No. 99-14833 (11th Cir. 2001).

19- Specifically, there are numerous cases where juries are presented with the option of convicting a defendant of one offense carrying a particular mandatory minimum as compared to a lesser-included offense lacking a mandatory minimum sentence (or having a lower mandatory minimum). In these cases, the determination of whether the higher mandatory minimum applies turns on whether the jury finds a particular offense fact beyond a reasonable doubt.

20- Pristinely clear, petitioner sentence should be circumscribed within the statutory minimum and maximum set forth in § 841(b) (1) (C) for a cocaine offense without regard to drug quantity. Under this section 841 (c) the statutory minimum is 0 and the maximum is twenty years. As the Supreme Court recognized in *Apprendi*, the Constitution's "procedural safeguards designed to protect [a defendant] from unwarranted pains should apply equally to [all] acts that" a state has criminalized. 530 US at 476.

21- Concerning this limits, the Supreme Court has reasoned that the procedural rights set out in the Fifth and Sixth Amendments are "constitutional protections of surpassing importance," *id.*, because requiring the government to prove its criminal accusations to an impartial jury beyond a reasonable doubt serves to "guard against a spirit of oppression and tyranny on the part of rulers, and as the great bulwark of our civil and political liberties," *id.* at 477 (Quoting 2 Joseph Story, Commentaries on the Const. of The United States 540-41 (4th ed. 1873).

22- As further explained in *Blakely*, these procedural rights not only "function as circuit breaker in the State's machinery of justice," but also serve as a "fundamental reservation of power in our constitutional structure" committed to democratic self-governance. *Id.* at 306. Pristinely clear, under the Constitution "the judge's authority to sentence derives wholly from the jury's verdict."

23- These principles are fundamental and should be interpreted and applied in light of the precise Constitutional texts concerning jury trial rights and related criminal procedures. The jury trial right appears twice in the U.S. Constitution. Section 2 of Article III provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." And the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." *Id.*

24- An the Constitution Fifth Amendment Right, in addition to its broad due process command,

6

sets out the grand jury requirement that must be met before persons can be "held to answer for a capital or otherwise infamous crime" and precludes persons from being twice put in jeopardy for "the same offense."

25- There is no doubt that, in addition to high-lighting the favored status of the jury rights and bedrock procedural limits on state police power, the language of these provisions should be read together to help chart the proper boundaries of the procedural rights at issue in the instant case.

26- By framing the jury trial right in terms of "crimes," which are the basis for a "prosecution" of "the accused," and by using the terms "crime" and "offense" in Article III and the Fifth Amendment, the constitutional text connotes that the criminal procedure rights in the Fifth and Sixth Amendments attach to any and all offense conduct for which the state seeks to impose a specific form of criminal punishment. *See United States v. White*, 551 F.3d 381, 390 (6th Cir. 2008) (Merritt, J., dissenting) ("By attaching the jury-trial right to *crimes*, rather than to any and all decisions related to the *accused*, the constitutional text suggests a basis for the distinction between offense conduct and offender characteristics."); *cf. Apprendi*, 530 U.S. at 500 (Thomas, J., concurring) (because "[a]ll of these constitutional protections determining which facts constitute the 'crime,'" "in order for a jury trial of a crime to be proper, all elements of the crime must be proved to the jury (and ... proved beyond a reasonable doubt)").

27- All specific and defined facts relating to offense conduct which the law makes the basis for depriving a person of any "life, liberty, or property" are subject to the jury trial right and related constitutional protections. The jury trial right therefore can and should be understood to concern any and all offense conduct set forth in criminal statutes because the state, through its legislative and executive branches, defines "crimes" and accuses and prosecutes crimes based on what persons do. Not for conduct outside the limits the constitution requires.

28- When the law ties mandatory consequences to any specific "offense" conduct—such as the amount of money or drugs involved in an offense, or whether and how the defendant used a weapon, or whether the offense caused bodily harm to a victim—the state has legally defined the specific conduct it believes merits criminal sanction. The jury trial right, in turn, guarantees that a defendant can demand that the state prove to a jury that the defendant did in fact commit the specific offense conduct the state seeks to punish.

29- Notwithstanding the importance of the jury, the modern criminal justice system still requires the efforts of sentencing judges to both appropriately tailor individual sentences..." See, *Cunningham*, 549 U.S. at 296 (Kennedy, J., dissenting); see also, Oregon *v. Ice*, 555 U.S. 160, 169 (2009) (a sentencing judge's fact-finding actions are constitutionally permissible so long as "[t]here is no encroachment ... by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused.")

30- Therefore, so long as a judge does not find offense-specific facts or facts that would otherwise alter the range of sentences to which a defendant would otherwise be exposed, judicial factfinding of offender-specific facts brings distinct benefits into the modern criminal justice system.

31- Stare decisis has long recognized that jury trials and sentencing serve distinctly different functions. As the Supreme Court has long understood, trials are backward-looking adjudications properly focused on requiring the government to establish all of the facts on which the state bases its demand for criminal punishment. See *Williams*, 337 U.S. at 246-47.

32- Unlike sentencing factors, which "traditionally involve characteristics of the offender..., [c]haracteristics of the offense itself are traditionally treated as elements," which "lie 'closest to the heart of the crime at issue.'" *United States v. O'Brien*, 130 S. Ct. 2169, 2176 (2010) (quoting

8

*Castillo v. United States*, 530 U.S. 120, 126 (2000)).

33- Juries are also better suited to find offense-related facts because they benefit from the limitations on admissible evidence, which ensure that adverse offender-related facts do not influence their factual determinations. Of course, offender-related facts are critical for a judge to set a fair sentence, but they are legally irrelevant to determining the facts of an offense and can sometimes prove to be unduly prejudicial in that context. *Cf. Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) ("For the determination of sentences, justice generally requires consideration *of more than the particular acts by which the crime was committed* and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." (Quoting *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)).

34- Today *Apprendi*'s principle applies with equal force to facts increasing the mandatory minimum, because a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. *Id.,* at 490. Because the legally prescribed range *is* the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense.

35- More importantly, *Alleyne* established that "dissociate the floor of a sentencing range from the penalty affixed to the crime. The fact that criminal statutes have long specified both the floor and ceiling of sentence ranges is evidence that both define the legally prescribed penalty. It is also impossible to dispute that the facts increasing the legally prescribed floor aggravate the punishment, heightening the loss of liberty associated with the crime." *Id Slip Opinion.*

36- The Court also held that, "defining facts that increase a mandatory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment, see *id.,* at 478–479, and preserves the jury's historic role as an intermediary

9

between the State and criminal defendants; see *US* v. *Gaudin*, 515 U. S. 506, 510–511." *Id.*

37- Indisputably, *Alleyne* means that, "the essential Sixth Amendment inquiry is whether a fact is an element of the crime. Because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received had a different range been applicable. There is no basis in principle or logic to distinguish facts that raise the maximum from those that increases the minimum." *Id.*

38- Supreme Court precedents also established that there exists a right to counsel during sentencing in both, capital and noncapital, cases. *Mempa* v. *Rhay*, 389 U. S. 128 (1967): see also, *Wiggins* v. *Smith*, 539 U. S. 510, 538 (2003). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Glover, supra.*

39- The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties. However, criminal defendants require effective counsel at trial and during plea negotiations. "Anything less . . . might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.'" See, *Massiah*, 377 US at 204 (quoting *Spano* v. *New York*, 360 US 315 (1959) (Douglas, J., concurring)).

40- In the instant case, petitioner's sentence and conviction carries the stigma of the kind of punishment(s) outside the jury's safeguards; without being proved beyond reasonable doubt. The sentence and conviction as imposed in the instant case is now 'debatable among jurists of reason', and also subject to review after *Alleyne*.

41- In conclusion, the sentencing range authorized to the jury's verdict was from 0 to 20 years of incarceration, and the judge, rather than a jury found the upward guideline departure for a life imprisonment. Also, the four points added under offense conduct in the presentence report which increased the penalty to which petitioner was subjected by way of indictment violated his Sixth & Fifth Amendment rights. The life sentence petitioner is currently serving should be vacated in order to sentence petitioner within the parameters authorized by the jury's verdict.

**WHEREFORE**, for the foregoing reasons and the case law cited above, petitioner prays this Honorable Court grants the relief seek herein Under Title 28 USC 2255 (6) (3). Also, grants and evidentiary hearing in order to determine if counsel rendered ineffective assistance in the instant case and/or grants any other relief this Court's deems proper.

File on the __19__ day of August 2013.

Respectfully submitted,

*(signature)*

Oscar Andres
Petitioner Pro Se
Register No. 50618-004

## **CERTIFICATE OF SERVICE**

*I HEREBY CERTIFY* under penalty of perjury that the following motion under Title 28 USC § 2255 (6) (3) to vacate set aside and correct a sentence is true and correct. Also, a copy of the foregoing was mailed first class pre-paid to: United States Attorney's Office 99 N.E. 4th Street Miami, Fl. 33132.

                                                                                                             Oscar Andres

                                                                                                             Petitioner Pro Se

Oscar Andres 50618-004
Fci #1, medical complex (Butner)
PO Box 1000
Butner, NC 27509



⇔50618-004⇔
Usdc Sd Fl Hon James I Cohn
Room. 203
299 E Broward BLVD
FORT Lauderdale, FL 33301
United States