# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Oscar Andrés,

Petitioner,

vs                                                    Crim. No. 98-0076-3 (KMM)

United States of America,

Respondents

_____/

## REPLY TO THE PROSECUTION'S RESPONSE
## IN OPPOSITION TO THE MOTION FILED UNDER
## AMENDMENT No. 782

**COMES NOW**, Oscar Andrés hereinafter known as petitioner, whom in pro se forma, respectfully submits this Reply to the prosecution's "Response in Opposition" submitted on January 14, 2015. (Docket No. 358) In support thereof petitioner avers as follows:

1- The prosecution stated the following argument(s) in opposition to the application of Amendment 782: 1) "*The Section 3553(a) factors weigh heavily against reducing Oscar Andres' sentence in this case*"; 2) Second, "*Oscar Andres' unwillingness to accept responsibility and his lack of remorse also militate against reducing his sentence.*"; and 3) Finally, "*in this § 3582(c)(2) proceeding Andres cannot relitigate his Apprendi argument that was rejected on his direct appeal.*" (DE 355:5). Thus, "*a defendant may not receive any sentence below the amended guideline range on grounds such as post-sentencing rehabilitation, poor health, and other grounds for a variance at an original sentencing proceeding.*"   (See, Response in Opposition )

1

2- Petitioner restates that the indictment was silent as to the amount of drugs involved in the conspiracy. Furthermore, the jury didn't found petitioner guilty of any specific quantity of kilograms of cocaine. The indictment and subsequent superseding charge just a measurable amount and at the sentencing hearing the amount of drug(s) determination was done under the preponderance of the evidence not beyond the reasonable doubt standard.

3- It is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.' See, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); see generally *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (per curiam). Pro se complaints should be read with "special solicitude" and should be interpreted to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations omitted).

4- On March 25, 1998, a Superseding Indictment was returned in the Southern District of Florida, charging petitioner and others with drug trafficking and firearm offenses. Specifically, petitioner was charged with Conspiracy to Import Cocaine (Count One), in violation of Title 21, United States Code, Sections 952(a) and 963; Conspiracy to Possess with Intent to Distribute Cocaine (Count Two), in violation of Title 21, United States Code, Section 846 and 841(a)(1); and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime (Count Three), in violation of Title 18, United States Code, Section 924(c). (Crim. DE 79)

5- On August 3, 1998, petitioner was found guilty by a jury of all three counts of the Superseding Indictment listing him as defendant. (Crim. DE: 178). On October 19, 1998, petitioner was sentenced to life imprisonment as to Counts One and Two and 60 months' imprisonment as to Count Three, to run consecutively. (Crim. DE: 211). The sentence imposed was within the advisory Sentencing Guidelines range as calculated in the Presentence Investigation Report

2

("PSR") prepared by the Probation Office. The PSR calculated an advisory guideline range of 360 months to life based on a Total Offense Level 42 and a Criminal History Category I. *See* PSR ¶74. The Total Offense Level included a Base Offense Level of 38 based on a drug amount of 252 kilograms of cocaine; a two-level enhancement for the use of a dangerous weapon; and a two-level enhancement for the physical restraint of a victim. *See* PSR¶¶43-45.

6- Petitioner re-avers, the drug amount(s) determination alleged by the prosecutor (257 kilos) wasn't a jury determination. The pre-*Apprendi* Superseding Indictment did not allege a specific drug quantity for either Counts One or Two. However, the penalty sheet reflected a maximum penalty of life imprisonment for each count. The drug amounts were was never stipulated in the indictment neither prove to a jury beyond a reasonable doubt.

7- Pristinely clear, the district court under its discretion should consider the following factors. First, in a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c) (2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy. See, *Dillon v. US*, 560 U.S. 817 (2010).

8- Also, the court in determining whether, and to what extent, a reduction in a defendant's term of imprisonment under 18 U.S.C. § 3582(c) (2) and this policy statement is warranted; the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced. See, *Pepper v. US*, 131 S. Ct. 1229 (2011); *Rita v.* US, 551 US 338 (2007); *Freeman v. United States*, 131 S.Ct. 2685, 2697-98 (2011).

9- More so, contrary to the prosecution's position, he is eligible for a sentence reduction under Amendment 782. The new guideline range clearly affects the sentence imposed by the district court, and has the effect of significantly lowering the sentence. The new base offense level after applying amendment 782 is now thirty **(36).** In accordance with the New Sentencing Table, petitioner base offense level is now 36 (after applying the four points for the two enhancements for a level 40) which provide a guideline range of 292 to 365 months. Unarguably, after applying amendment 782, petitioner a first time offender meets the criteria for a sentence reduction because his new guideline range has been lowered.

10- Petitioner's sentence should be circumscribed only to those facts found by the jury not by the district court. The indictment used against petitioner was silent as to the amount of drugs and the jury made no specific drug amounts findings. The guideline range set forth in § 841(b) (1) (C) for any drug offense without regard to drug quantity is 0 to 20 years.

11- Moreover, according to applicable law, on April 10, 2014, the United States Sentencing Commission ("USSC") approved by unanimous vote an amendment to the United States Sentencing Guidelines–Amendment 782– that would revise the offense levels found in the Drug Quantity Table in section 2D1.1. The amendment would reduce by two levels the offense levels across drug types and would remain linked to statutory mandatory minimum penalties.

12- Subsequently, on July 18, 2014, and pursuant to the authority conferred to the USSC by 28 U.S.C. § 994(u) regarding guideline amendments that may be considered for retroactive application, the Commission voted to make Amendment 782 retroactive effective November 1, 2014. In other words, the USSC voted to make the reduced offense levels under the Drug Quantity Table of USSG § 2D1.1 applicable in a retroactive fashion to individuals serving an imprisonment term and whose sentences were computed using the Drug Quantity Table. See

USSG § 1B1.10.

13- The United States Sentencing Commission has expressed that Amendment 782 "represents a significant step toward the goal the Commission has prioritized of reducing federal prison costs and overcrowding without endangering public safety." (Press Release, October 31, 2014 http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/news-adviso ries/20141031_News_Advisory.pdf). Further, the Chair of the Sentencing Commission, Judge Saris, stated the following: "This amendment is an important start toward addressing the problem of over incarceration at the federal level." (Id.)

14- Undoubtedly, public safety is an important factor in the analysis of whether an otherwise eligible defendant should receive a sentencing reduction. The application notes to USSG § 1B1.10 specifically provides that in determining whether a reduction is warranted and the extent of any such reduction, "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) . . . ." USSG § 1B1.10, cmt., note 1(B)(i). Further, "the court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment . . . ." USSG § 1B1.10, cmt., note 1(B)(ii). Finally, the court may also consider "post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment . . ." USSG § 1B1.10, cmt., note 1(B)(iii).

15- However, in the reasons for the amendment section at Appendix C to the Sentencing guidelines Manual, the Commission expressed the following:

> "The Commission carefully weighed public safety concerns and, based on past experience, existing statutory and guideline enhancements, and expert testimony, concluded that the amendment should not jeopardize public safety. In particular, the Commission was informed by its studies that compared the recidivism rates for offenders who were released early as a result of retroactive application of the Commission's 2007 crack cocaine amendment with a control group of offenders who served their full terms of imprisonment. See USSG

App. C, Amendment 713 (effectiveMarch 3, 2008). The Commission
detected no statistically significant difference in the rates of
recidivism for the two groups of offenders after two years, and again
after five years. This study suggests that modest reductions in drug
penalties such as those provided by the amendment will not increase
the risk of recidivism." *Id.*

16- Further, and relying from testimony by the Department of Justice, the Commission

concluded that the sentencing reductions under the amendment "would not undermine public

safety or law enforcement initiatives." To the contrary, "the amendment would permit resources

otherwise dedicated to housing prisoners to be used to reduce overcrowding, enhance

programming designed to reduce the risk of recidivism, and to increase law enforcement and

crime prevention efforts, thereby enhancing public safety."

17- Particularly in the instant case as part of the rehabilitation since the arrest petitioner has

submitted evidence of some of the educational courses completed as part of the 3553(a). (See

Original Petition) Therefore, district courts could now consider evidence of post-sentencing

rehabilitation to support a downward variance from the guidelines.  See, *US v. Gall*, 128 S. Ct. at

597(2007) (noting that in considering the latter, reviewing courts must take into account the

"totality of the circumstances"); see also, *United States v. Talley*, 431 F.3d 784, 788 (11th Cir.

2005) (Appellant has the burden of establishing that his sentence is unreasonable in light of the

record, the purposes of a criminal sentence as set out in 18 U.S.C. § 3553(a)(2)(A)-(C), and the

other sentencing factors of § 3553(a)).

18- More than a decade ago, the Supreme Court gave judges the power to impose sentences that

are not greater than necessary to satisfy the statutory purposes of sentencing, in order to reflect

*all* of the characteristics of the offender and circumstances of the offense, to reject draconian

guidelines that are not based on national sentencing data and empirical research and to serve

their function in the constructive evolution of responsible guidelines. See, *Kimbrough v. US*, 128

S. Ct. 558 (2007). Since then, the Court has emphasized this model of sentencing criteria and it's the guiding post in federal courts. *Spears v. US*, 129 S. Ct 840 (Jan. 21, 2009); See also, *Nelson v. US*, 129 S. Ct. 890 (Jan. 26, 2009).

19- In order to reduce unwarranted federal sentencing disparities, the Sentencing Reform Act of 1984 authorizes the United States Sentencing Commission to create, and to retroactively amend, Sentencing Guidelines to inform judicial discretion. Based on the retroactive application, the statutory authority underlying it and the Supreme Court intervening decision in *Freeman*, and its progeny, petitioner avers he is entitled to the relief as implemented in Amendment 782.

20- The Sentencing Reform Act of 1984, 18 U. S. C. §3551 et seq., calls for the creation of Sentencing Guidelines to inform judicial discretion in order to reduce unwarranted disparities in federal sentencing. The Act allows retroactive amendments to the Guidelines for cases where the Guidelines become a cause of inequality, not a bulwark against it. When a retroactive guideline amendment is adopted, §3582(c) (2) permits defendants' sentenced based on a previous sentencing range that has been modified to move for a reduction of sentence. *See, Justice Kennedy Slip Opinion in Freeman, supra.*

21- A reviewing court should modify a defendant's sentence pursuant to § 3582(c) (2) if, inter alia, the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *18 USC § 3582(c) (2).* Thus, an amended Guideline must "'have the effect of lowering the sentencing range actually used at sentencing'" in order to give rise to a reduction under § 3582(c) (2). *Id.*

22- In the instant case, at the sentencing hearing 15 years ago , the guideline range was for a base offense level of 42 (Level 38 plus the 2 points for using a firearm and 2 points because a victim was physically restrained) The district court should start at a base offense level 38. Subsequently,

apply the minus two point's reduction of Amendment 782 for a new base offense level of 36. Then add the four enhancements points; 1) the gun charge and 2) the victims restraining for a new base offense level of **40**. Today at a base offense level 40 and being a first offender, the new sentencing guideline range is from 292 to 365 months. Indisputably, after the application of Amendment 782, petitioner's sentencing range has been lowered and this modification should allow the sentencing court to resentence accordingly.

    *WHEREFORE*, for the foregoing reasons and case law cited herein, petitioner prays this Honorable Court grants the relief sought herein. Also, vacates the sentence and conviction imposed in the instant case according to the provisions of Amendment 782 and/or grants any other relief this Court deems proper.

Filed on the _____ day of February 2015.

                                    Respectfully submitted,

                                      Oscar Andres

                                      Petitioner Pro Se

                                      Register No. 50618-004

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY,* under penalty of perjury that the following motion in Reply to the Prosecution's Response in Opposition is true and correct. Also, Also, a copy of the foregoing was mailed first class pre-paid to: United States Attorney's Office 99 N.E. 4th Street Miami, Fl. 33132.

Oscar Andres

Petitioner Pro Se