### United States District Court

### Southern District of Florida

### Miami Division



**United States of America**

**vs.**                                    **Case No: 98-76-CR-Moore(s)**

**OSCAR ANDRES**

_____/

---

**MOTION TO COMPEL THE UNITED STATES ATTORNEY OFFICE TO FILE A MOTION FOR A SENTENCE REDUCTION PURSUANT TO RULE 35(b), WHERE SUBSTANTIAL ASSISTANCE HAS BEEN PROVIDED.**

---

   **COMES NOW** Defendant **OSCAR ANDRES** in pro-se in the above style cause herby files this Motion to Compel the United States Attorney office for the Southern District of Florida to file a motion for a sentence reduction pursuant to Rule 35(b), where Substantial Assistance has been provided, and any refusal to file such motion is not rationally related to any legitimate government end.

---

#### BACK-GROUND-HISTORY

**(1).** Defendant was charged by indictment with a violation of section 21 U.S.C 846,

841, 18 U.S.C 924(c) and 922(g)(1).

**(2).** Defendant was convicted of violating section 21 U.S.C 846, 841, and 18 U.S.C 924(c), and was sentenced to a term of life imprisonment on count two(2), and Five years consecutive on count three(3).

1

=============================================================================

**ARGUMENT AND CITATION OF LAW BASED ON THE HIGHER COURT'S INTERPUTATION OF THE COOPERATION PROCEDURES THAT LOWER COURTS MUST UNDERTAKE.**

=============================================================================

The Substantial Assistance regime is not a spoils system designed simply to reward a cooperative defendant; it is designed to benefit the Government in its prosecution or investigation efforts. **"(United States v. Orozco), 160 F.3d 1309, 1316 (11th Cir, 1998), (Quoting United States v. White 71 F.3d 920, 924) (D.C Cir. 1995)**. For that reason courts leave it to the United States to determine whether a defendant assistance has benefited the United States to the point where a defendant should be rewarded by receiving a lower sentence than what was originally contemplated.

However this determination must be made upon a good-faith and fair dealings interpretation. The Eleventh Circuit weighs heavily on the Supreme Court's holding in **(United States v. Wade), 504 U.S 181 (1982):** Where the court limited the free exercise of that power only to the extent that the Government cannot exercise that power or fail to exercise that power, for an unconstitutional motive or where the refusal is not rationally related to any legitimate Government end.

Defendant would like to establish the grounds that entitles him to relief, and herby makes it abundantly clear that he has to First: present evidence that substantial assistance has been provided (Not based on generalized allegations, but based on the DEA records). Secondly: Defendant is aware that he must make a Substantial Threshold showing "that the Government refusal is based on an impermissible motive.

The Supreme Court has long recognized prosecutorial discretion as a particularly ill-suited to judicial review. However a prosecutors discretion is not completely unlimited he has an implied obligation of good-faith and fair dealing in every contract; he may not make decisions "invidiously or in bad-faith see; **(Unites States v. Khan) 920 F.2d 1100, 1105, (2nd Cir 1990), (United States v. Rexach) 896 F.2d, 710, 714, 2nd Cir 1990.**

In **(United States v. Kuntz), 908 F.2d 655, 657 (10th Cir 1990):** The Court held that it do not preclude the possibility that perhaps in an egregious case, where the prosecution stubbornly refuses to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaning relief, the court would be justified in taking some corrective action.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a Sovereignty whose obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As, such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocent suffer.

He may prosecute with earnestness and vigor-indeed, he should do so. But while he may strike hard blows he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use ever legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed.

**The Eleventh Circuit has expressed similar Sentiment:**

A United States Attorney carries a double burden. He owes an obligation to the Government, just as any Attorney owes an obligation to his Client, to conduct his case zealously. "But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused.

Such representation imposes an overriding obligation of fairness so important that Anglo-American Criminal Law rests on the Foundation; better the guilt of escape than the innocent suffer, **(United States v. Wilson), 149 F.3d 1298,1303, (11th Cir 1998), (Quoting United States v. Dunn) 307 F.2d 883, 885 (5th Cir 1962).** A prosecutor is held to these standards in his individual capacity. See e.g. **Thomas v. Tenneco Packaging Co, 293 F.3d 1306, 1327 (11th Cir 2002).** Independent judgment is an essential ingredient of good lawyering since attorney's

duties not only to their clients, but also, as officers of the court, to the system of justice as a whole.

Defendant would like to point out to the Honorable Court that the DEA's Records along with the Prosecutor's E-mail responding to his Attorney clearly support the fact that any position inconsistent to the Government knowingly accepting his Brothers cooperation as third party assistance, on his behalf would result in action not rationally related to any legitimate government end.

================================================================

**COOPERATION PROVIDED BY DEFENDANT AND THE THIRD PARTY ASSISTANCE PROVIDED ON HIS BEHALF.**

================================================================

During defendants cooperation he provided information to the Government in reference to large level Drug dealers of the Mexican Cartel. Most importantly, Defendants Attorney Rene Palomio Jr. Forwarded an email on August 10, 2011 (12:23 pm), to the Government Agent Karlyn Hunter with a summary of the Assistance defendant agreed to provide. See (Exhibit-A-Information provided by the defendant, to the Government Agent Karlyn Hunter, based on ongoing criminal investigation of Dangerous Members of the Mexican Drug Cartel.

**(Attn: Rene Palomino Jr.):**

Pursuant to our conversation my client Oscar Andres has information regarding a Mexican Cartel which consists of the following:

**(1). The Cartel is from Shaloa El Chapo Guzman**

**(2). The import 100's of Kilograms of Cocaine and thousands of pounds of marijuana into the United States.**

**(3). My client has the names and phone numbers of the family members involved.**

**(4). My client has the name of the Mexican boarder patrol agents who assist the cartel.**

4

(5). The drugs are received in Arizona and Miami. My client has the names of the individuals who live in Miami and Arizona.

(6). My client has information regarding the routes used by the Cartel to smuggle the drugs into the United States.

My clients twin brother, Oman Andres is willing to assist the Government in the investigation. I spoke with DEA special Agent Shane Cantoni who is interested in pursuing this investigation. I know you both have spoken already, please pass this information to the AUSA who will be in charge of getting the necessary approval to proceed with this matter since I know you are no longer working narcotic cases.

### Reply by Karlyn Hunter via e-mail on August 10, 2011 (1:17pm)

Thanks Rene. I've forwarded this on to Lynn Kirkpatrick, which is the supervisor doing the reassignment. If you don't hear from anyone, please reach out to her at 305-961-9239.

"Of Importance" First of all, it goes without saying, that it was made abundantly clear that defendant was willing to provide information to the government, and his twin brother was willing to assist the government by providing Third Party assistance on his behalf. Furthermore Agent Karlyn Hunter forwarded this information knowing the defendant and is brothers intent.

==================================================================

### THIRD PARTY COOPERATION PROVIDED BY OMAR ANDRES ON BEHALF OF HIS BROTHER OSCAR ANDRES.

==================================================================

See **(Exhibit-B-Investigation Reports of the Third Party Assistance).** The following investigations were a result of the third party cooperation from CS-07-126198 "(Omar Andres)" In July 2007, S/A Knerr cultivated and documented confidential source CS-07-126198 that was able to infiltrate the Daniel Ramirez multi-kilogram black tar heroin trafficking organization. At that time S/A Knerr met with Detectives from the Miami Dade Police Department narcotics unit, regarding RAMIREZ'S organization. S/A Knerr immediately launched an aggressive investigation into the organization attempting to identify several associates of Ramirez living in the Miami, Florida area.

Over the next several months, S/A Knerr utilizing CS-07-126198 orchestrated multiple complex surveillance operations that produce the purchase of over one hundred and sixty grams of black tar heroin from Ramirez's organization.

On September 5, 2007, Ramirez was arrested and his vehicle was seized and forfeited criminally. S/A Knerr prepared an affidavit of complaint for Ramirez which was signed by United States Magistrate Judge White in the Southern District of Florida. S/A Knerr testified before a Grand Jury which resulted in a true bill indicting Ramirez on federal charges for conspiracy to distribute heroin. S/A Knerr completed an extensive debriefing of Ramirez. The debriefing result in valuable information into the structure of the organization, and the cultivation and cooperation of Ramirez. With the help of the Assistance United States Attorney Office, Ramirez posted bond, and cooperated with Agents.

On October 11, 2007, S/A Knerr furthered the investigation and arrested three additional members of the heroin organization, to include the source of supply, Robinson FERNANDEZ. S/A Knerr prepared an affidavit of complaint for FERNANDEZ and co-defendant Charles COELLO, which was signed by United States Magistrate Judge Bandstra. S/A Knerr prepared an affidavit of complaint for FERNANDEZ and co-defendant Charles COELLO, which was signed by United States Magistrate Judge Bandstra. S/A Knerr executed the Federal search warrant which resulted in the criminal seizure and federal forfeiture of FERNANDEZ 's vehicle as well as evidence which will be utilized for prosecution. S/A Knerr testified before a Grand Jury which resulted in a true bill indicting Fernandez and COELLO on Federal charges for conspiracy to distribute heroin. As a result of this investigation, S/A Knerr has arrested four and federally indicted three members of the heroin organization, purchased over one hundred and sixty grams of heroin and seized over 30,000 in assets.

See (Exhibit-C-paragraph 3 - Explains that Agent induced the third party cooperation, and pointing out to the Attorney that such assistance would benefit defendant): **Subsequently, I spoke with Agent Knerr and he confirmed that he wanted Omar to assist him and that it would benefit you and your brother. I met with Omar and explained to him the situation. He told me that he was going to get a hold of Agent Knerr and keep me informed as to what is**

6

going on. I assume if there would be any problems with the investigation Omar would have informed me or the Agent Knerr would inform me since they both have my personal cell number.

======================================================================

**THE GOVERNMENT'S REFUSAL TO FILE A MOTION FOR A SENTENCE REDUCTION IS NOT RATIONALLY RELATED TO ANY LEGITIMATE END.**

======================================================================

The Government Attorney Richard Getchell (AUSA), takes the position that because there was not an agreement for defendant's brother Omar Andres to provide third party cooperation, then the United States Attorney office will not be filing a motion for a sentence reduction on defendant's behalf. See (Exhibit-D-): **(AUSA-Richard Getchell):** I have received and reviewed the reports forwarded by S/A Knerr.

Although it appears that Omar Andres cooperated with DEA in 2007 in connection with an investigation which later resulted in a criminal case prosecuted by this office, there does not appear to have any agreement with, or representations to either Oscar Andres or Omar Andres that Omar's cooperation would be considered for the benefit of Oscar Andres. In fact, it appears that before he agreed to act as an informant Omar Andres was told that the United States Attorney Office would not consider granting a benefit to Oscar Andres for third party cooperation, yet he agreed to act as an informant nonetheless.

This position by Mr. Getchell is refuted by Agent's Knerr request for the cooperation of Oscar Andres and his brother. Furthermore defendants Attorney Rene Palomino Jr. Advised defendant of Agent's Knerr request in a letter wrote December 21, 2009. See (Exhibit-C-letter from Attorney Palomino...3rd paragraph): **Subsequently, I spoke with Agent Knerr and he confirmed that he wanted Omar to assist him and that it would benefit you and your brother. I met with Omar and explained to him the situation. He told me that he was going to get a hold of Agent Knerr and keep me informed as to what was going on.**

7

The Governments action completely undermines the integrity of judicial fairness. The Governments Agent Agreed to defendants Attorney that he would receive credit from his brothers third party assistance and induced him to persuade his brother to cooperate. (Which put him and his family's life at great risk).

Although the Government obtained the benefits from defendant and his brother third party cooperation, it completely failed to uphold its end of the deal, by taken positions contrary to any legitimate purpose.

Defendant hereby presents documents from his Attorney, (who is also an officer of the court), along with documents from AUSA Getchell, that acknowledges the fact that defendant and his brother's cooperation rose to the level of substantial assistance.

Agent Knerr knew the intent of the defendant and his brother, as far as providing cooperation to the government, and who was to receive the credit for such assistance. Agent Knerr even convinced them through Attorney Palomino to cooperate, by continuing to point out that the defendant would receive credit for such cooperation.

Now to undertake a different position, after the cooperation has been successful and the Government has benefited and received convictions, is not rationally related to any legitimate government end. It's important for the United States Attorney office prosecutors and agents to keep in mind that they represent the United States Attorney office, and American citizens expect them to uphold the law with fairness and in good-faith.

Applying the Equal protection clause of the 14th Amendment requires that the Assistant United States Attorney to handle defendants Oscar Andres case with fairness, and not with an improper personal motive that undermines the judicial system, when the record and facts clearly demonstrate that relief is overdue.

Furthermore defendant would like to present to the Honorable Court and the United States Attorney office documents which support the fact that the Government has filed motions for a sentence reduction on defendant's behalf, where far less assistance has been provided. This position clearly fails to uphold the (Equal Protection Clause), of the 14th Amendment. See:

8

**(Exhibit-F-), the Governments motion for a sentence reduction for defendant Paul David Lamar, based on the Substantial Assistance he provided): States as follows:** The Defendant PAUL DAVID LAMAR, has provided substantial Assistance to the Government with respect to his co-defendant in the above captioned case. The co-defendant ultimately entered a plea of guilty.

It should be noted that defendant PAUL DAVID LAMAR and his co-defendant both received substantial assistance motions for a minor debriefing, which is by far lesser cooperation then what defendant and his brother provided. Also See: **(Exhibit-F-Motion for a sentence reduction for Frederick Charles Hall): States as follows:** following his arrest, Hall confessed his arrest, Hall confessed his involvement in a cocaine conspiracy and gave detailed information regarding the involvement of his co-conspirators the information provided by Hall was substantially corroborated by other information and evidence known to investigators, and therefore the information was considered to be truthful. The information provided by Hall supported other evidence regarding the involvement of his co-conspirators.

Since his arrest and while on pretrial release defendant Hall has pro-actively assisted law enforcement officers with the Gainesville Police Departments special investigations division by making controlled buys of crack cocaine from known cocaine traffickers in the Gainesville, Florida area. Hall has made two controlled Buys of 2 grams of cocaine each.

The Government views Hall two small amount of cocaine drug purchases of 2 grams of cocaine each, as providing substantial assistance and filed the motion for a sentence reduction in good-faith as the office should have did, especially when one put his/her life and family life at great risk.

Although defendant and his brother Omar provided far more assistance than defendant Hall, the Government has thus far fail to move for relief on Defendants behalf. "It can't be stressed enough, that fairness and good-faith determinations should be upheld in making decisions that represents the United States Attorney office of America.

## CONCLUSION

===========================================================================

Defendant has satisfied his burden by first: Showing without a doubt that Substantial Assistance has been provided, and Secondly showing, that the Government refusal to move on his behalf for a sentence reduction is based on improper motivation, and is clearly not rationally related to any legitimate Government End.

Defendant respectfully request this Honorable Court to order the United States Attorney office to file a motion for a sentence Reduction pursuant to Rule 35(b), or Grant him an evidentiary hearing to resolve the issue.

===========================================================================

## CERTIFICATE OF SERVICE

===========================================================================

I, **OSCAR ANDRES** swear under oath pursuant to the penalty of perjury that the statements in said motion is true and a copy of said motion was mailed to the United States Attorney Office on this 26 day of Jan 2015.

_____

UNITED STATES ATTORNEY OFFICE

Anne Schultz

Room 825

99 N.E. 4th Street, Suite 216

Miami, FL. 33132

**OSCAR ANDRES**

10

**(Fxhibit-C-)**

LAW OFFICES

# RENE PALOMINO JR.

PROFESSIONAL ASSOCIATION

TEL. (305) 373-4534
FAX (305) 373-4535

DOWNTOWN LEGAL CENTER
46 NORTHEAST 6TH ST
MIAMI, FL 33132

December 21, 2009

Oscar Andres
Reg. NO.: 50618-004
FCI-2 Butner
P.O.Box 1500
Butner, NC 27509-1500

RE: Representation of Oscar Andres and Andres Andres.

Dear Mr. Andres:

This letter is in response to your letter to me dated December 16, 2009. On June 10, 2008 your brother, Omar Andres, hired me to represent you and your father, Andres Andres, in an attempt to receive a sencente reduction pursuant to Rule 35 Motion. Omar explained the financial hardship your family was going through and I agreed to represent both you and your father for a total fee of $7,500.00 which is one-half of what I would charge for representing two individuals. To date I have only received $5,000.00 of the fee.

Nevertheless, I got involved in the cases and I met with your brother on numerous occasions and with Special Agent Ryan Knerr of the D.E.A. I have also had numerous communication with A.U.S.A. Peter Forand regarding both cases. Last time I spoke with Mr. Forand he indicated that at the present time he could not get approval for the Rule 35 Motions because the cooperation in the cases was third party cooperation based on information given to him by Agent Knerr. However, he told me the door was being left open because Omar was to assist Agent Knerr in another investigation.

Subsequently, I spoke with Agent Knerr and he confirmed that he wanted Omar to assist him and that it would benefit you and your brother. I met with Omar and explained to him the situation. He told me that he was going to get a hold of Agent Knerr and keep me informed as to what was going on. This was several months and Omar has not called me or given me an update as to what is going on. I assume if there would be any problems with the investigation Omar would have informed me or Agent Knerr would inform me since they both have my personal cell number.

Throughout my representation of you and your father I have spoken with your brother and mother on numerous occasions whenever they called me. Your allegation that you or your family cannot get a hold of me is simply not true. My phone numbers have not changed. As to why I have not filed my appearance in Court on your behalf the answer is simply there is nothing pending before the Court and your behalf. Once the government decides to file a Rule 35 Motion on your behalf and your father I will then file my appearance.

Miami, Florida 33132-2111

Phone: (305) 961-9281

Cell: 786 564-9126

Fax: (305) 536-7213

**From:** Chad Van Cleave [mailto:theonomist@gmail.com]
**Sent:** Wednesday, September 03, 2014 09:54
**To:** Knerr, Ryan W. (DEA)

[Quoted text hidden]

[Quoted text hidden]

---

Mon, Sep 22, 2014 at 9:18 AM

**Chad Van Cleave** <theonomist@gmail.com>
Reply-To: chad@drugandgunlawyer.com
To: "Getchell, Richard (USAFLS)" <Richard.Getchell@usdoj.gov>

Dear Mr. Getchell,

I'm following up with you now on the hope that you have received and had time to review the two CDs Mr. Knerr was forwarding to you. At your earliest opportunity, can you let me know whether you have or not, and then I'll follow up appropriately. Thanks!

On Wed, Sep 3, 2014 at 10:38 AM, Knerr, Ryan W. <Ryan.W.Knerr@usdoj.gov<mailto:Ryan.W.Knerr@usdoj.gov>> wrote:
Richard,
I have two CD's containing all the reports that I can access from Birmingham related to Omar and his cooperation regarding these two cases G1-07-0280 and G1-08-0004. If there is any other documentation (i.e. his CS file or other reports in the main case files) to facilitate Omar's rule 35 will have to be obtained from HIDTA group 13 case files in Weston, FL. If you can provide me with an address, I will send these CD's out today.
Thanks,
Ryan
[Quoted text hidden]

---

Mon, Sep 22, 2014 at 2:07 PM

**Getchell, Richard (USAFLS)** <Richard.Getchell@usdoj.gov>
To: "chad@drugandgunlawyer.com" <chad@drugandgunlawyer.com>
Cc: "Kirkpatrick, Lynn (USAFLS)" <Lynn.Kirkpatrick@usdoj.gov>

Dear Mr. Van Cleave:

I have received and reviewed the reports forwarded by S/A Knerr. Although it appears that Omar Andres cooperated with DEA in 2007 in connection with an investigation which later resulted in a criminal case prosecuted by this Office, there does not appear to have been any agreement with, or representations to, either Oscar Andres or Omar Andres that Omar's cooperation would be considered for the benefit of Oscar. In fact, it appears that before he agreed to act as an informant Omar Andres was told that the USAO would not consider granting a benefit to Oscar Andres for third party cooperation, yet he agreed to act as an informant nonetheless. It was not until 2011 that attorneys for Oscar Andres sought a third party cooperation arrangement for Oscar involving Omar Andres, and also asked to receive credit for the cooperation rendered by Omar in 2007, but this Office declined. As far as I can tell, no one representing Oscar Andres approached the government seeking third party cooperation through his brother Omar in 2007

(EXHIBIT-F-)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA            :
                                    :
              v.                    :        Case No: 8:06-CR-199-T-24MSS
                                    :
PAUL DAVID LAMAR                    :


## MOTION BY THE UNITED STATES FOR
## REDUCTION OF DEFENDANT'S SENTENCE

Pursuant to Title 18, United States Code, Section 3553(e) and Section 5K1.1 of the United States Sentencing Guidelines, the United States moves this Court to grant a two-level reduction in the defendant's offense level, and in support thereof states as follows:

The defendant, PAUL DAVID LAMAR, has provided substantial assistance to the government with respect to his co-defendant in the above captioned case. The co-defendant, ultimately, entered a plea of guilty. Thus, the United States submits that the defendant's cooperation merits a two-level reduction in the defendant's offense level.


## MEMORANDUM OF LAW

The Court, on motion of the government, may reduce a defendant's sentence to reflect a defendant's substantial assistance. 18 U.S.C. § 3553(e); USSG §5K1.1.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**UNITED STATES OF AMERICA**

                                          **CASE # 1:06CR-27-MMP**

     **vs.**

**FREDERICK CHARLES HALL**

_____/

### GOVERNMENT'S CERTIFICATION OF DEFENDANT'S
### SUBSTANTIAL ASSISTANCE PURSUANT TO TITLE 18 U.S.C. § 3553(e) AND
### SECTION 5K1.1 OF THE FEDERAL SENTENCING GUIDELINES

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, pursuant to Title 18 U.S.C. Section 3553(e), and Section 5K1.1 of the Sentencing Guidelines, to certify that defendant **FREDERICK CHARLES HALL** has provided substantial assistance to the Government in the investigation and prosecution of offenses committed against the United States. In support of this motion, the government would rely on the following:

Defendant **FREDERICK CHARLES HALL** entered a guilty plea to one count of conspiracy to possess with the intent to distribute more than 50 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(A)(ii). Defendant would normally be subject to a penalty of imprisonment of not less than ten years or more than life imprisonment, a fine of up to $4,000,000, and a five year term of supervised release. Based upon his prior drug felony conviction, he is subject to a minimum mandatory sentence of 20 years to life imprisonment, $4,000,000.00 fine, and a minimum term of ten years to life on supervised release. Based on a total

offense level of 29 and Criminal History category III, his guideline range is 108 to 135 months

Defendant **HALL** was federally indicted on August 22, 2006 along with five other co-defendants. Following his arrest, **HALL** confessed his involvement in a cocaine conspiracy and gave detailed information regarding the involvement of his co-conspirators. The information provided by **HALL** was substantially corroborated by other information and evidence known to investigators, and therefore the information was considered to be truthful. The information provided by **HALL** supported other evidence regarding the involvement of his co-conspirators.

Since his arrest and while on pretrial release defendant **HALL** has pro-actively assisted law enforcement officers with the Gainesville Police Department's Special Investigations division by making controlled buys of crack cocaine from known cocaine traffickers in the Gainesville, Florida area. **HALL** has made two controlled buys of 2 grams of cocaine each. These buys led to a state search warrant and three state arrests. The individuals arrested and items seized are as follows: (1) Arago Welch – 22.10 grams of cannabis, 2.90 grams of cocaine, paraphernalia and $375 seized., (2) Nakeya Johnson – 17.20 grams of MDMA and $3750 seized, (3) Alphonso Baker – 3.18 grams of Percocet and paraphernalia seized. These individuals have been charged by the State of Florida and the information and assistance provided by **HALL** substantially advanced the government's case. If **HALL**'s assistance is needed in the prosecutions of these individuals, he understands he will not receive the benefit of another federal motion on his behalf.

Based on the evidence available at this time, it is believed that the information provided by **HALL** has been truthful and complete with respect to the scope of his involvement and the roles of

his co-conspirators. Defendant **HALL**'s role in the underlying conspiracy was as a street-level distributor, assisting higher level cocaine dealers and selling cocaine in small amounts to users. The government evaluates defendant's assistance to date as fair. The defendant faces the same risks as other incarcerated witnesses.  The government believes these risks can be addressed through the Central Inmate Monitoring System within the Bureau of Prisons.  The government does not condone or excuse defendant's conduct in this case, but *believes the court should consider* his cooperation and substantial assistance in other cases and investigations in determining his appropriate sentence.

Respectfully submitted,
GREGORY R. MILLER
United States Attorney


/s/ F. T. Williams
F.T. WILLIAMS
Assistant United States Attorney
300 E. University Ave., Ste. 310
Gainesville, Florida  32601
(352) 378-0996


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by regular U.S. Mail this 20th day of March, 2008, to JOHN BROLING, Attorney for defendant HALL, P.O. Box 40, Starke, FL 32091.

/s/ F. T. Williams
F.T. WILLIAMS
Assistant United States Attorney

3

From: **Omar Andres** omar@omarandres.com
Subject: Hi Ryan ,Its Omar Andres the UM football player How are you!!
Date: April 23, 2015 at 4:59 PM
To: Ryan Knerr ryan.w.knerr@usdoj.gov
Cc: Omar Andres omar@omarandres.com

Dear Ryan,

Hope all is well Ryan. Its Omar Andres the UM football player. It Has been a while since we last
spoke. The reason I'm reaching out and writing is to request your help in shedding some light on
my brother Oscar's sentence reduction case as you may have been informed my father passed
away and will not have any use for this request. On the other hand , my brother Oscar really needs
you to come forward and confirm our initial and only agreement which was to work for a
sentence reduction on my brothers behalf and I did do my part Ryan . I always held myself
accountable on my end of the our deal and conducted myself with honesty and integrity towards
you guys and the DEA agency. I was on call and at your immediate disposal at all times. Ryan a
simple question I ask. Did you and the DEA benefit from the cases I created for your agency
? YES and we can agree all this is accurate. "You know that I was working for my brother's
sentence to be reduced. You told me you knew that, and you accepted my help for that purpose.
Now I understand that the Government is saying that I was told that Oscar would not get credit
for my work. That is not true, and you know it is not true. You have to speak up about this. You
know this is not right. Please speak up about it. Please tell the prosecutor the truth."


 I would like to refresh or remind you in regards to how we met and some of the events that took
place while I was working with you the DEA.
Remember Ryan, I was not working with the DEA because I had done anything wrong or had
committed or was arrested for any crimes. Originally I did not know you Ryan and was not aware
that we were able to obtain such a request as to be able work with the DEA until Henry Mann
girlfriend Angie informed us she had previously worked with you guys DEA agent Rodney and
was helped by your agency with reducing Henry Mann 6 life sentence through her
cooperation. Henry was in prison with my brother Oscar and that's how I was introduced to you
guys the DEA Ryan. I sincerely believe you can recall from our initial meeting and on several
instances where I expressed ;that all I wanted and was working for my dad and brother to able to
get help in their sentence reduction before my dad passed away due to his health issues. I also
signed a paper in your office where it clearly stated I was NOT working for monetary
compensation but in fact for time reduction on Oscar Andres and Angel Andres sentence
reduction. I'm sure you recall that my dad was ill and that Time was of an essence for us , as we
later realize it took too long for the right actions to be put into play and my dad passed away in
prison.

I understand you were a newly hired agent at the time these cases were conducted and may have had some of the process hindered by misinformed information that was not handle and pursued with the same tenacity that the cases were made in order to have the proper individuals credit us for our cooperation in helping the DEA benefit . Please Ryan I sincerely beg you do the right thing and come forward and confirm, what you and I both know to be the truth that I worked with you guys THE DEA IN RETURN for your help in my brother and fathers sentence reduction. That famous quote "the truth shall set you free " is called upon in this case and applies here. Ryan you coming forward and confirming our original and only agreement is the key to my brothers Oscar Andres freedom.

Ryan I just want to take you back and refresh your memory to that last case and phone conversation we had.

As I recall Several successful cases later , as matter of fact on the last case we worked together I will never forget you called me and told me to call my attorney, and inform him that what I had done was enough to help my dad and brother. Also I remember you telling me how your fellow agents were mocking you about the information that I had giving you was not accurate and you had the last laugh as it was accurate and you had another successful case added to your resume. Now I come to you and ask you to look deep within yourself and allow the truth to come to light. Thank you Ryan for taking the time to read this email and look forward to hearing from you.

Sincerely ,

Omar Andres

or at any time prior to 2011, when he was turned down. Accordingly, our position that we will not consider for the benefit of Oscar Andres any assistance Omar Andres gave while he was a DEA informant remains unchanged.

If you believe promises were made by the USAO or DEA to consider Omar Andres' cooperation for the third party benefit of Oscar Andres, I again request that you provide support for your claim, including documentation and/or details concerning the nature of the promise, whether the promise was in writing or otherwise, when the promise was made, by whom and to whom. Otherwise, I'm afraid there is nothing further for us to consider.

Thank you for your interest in this matter.

Regards,

Richard Getchell



**Richard E. Getchell**

**Deputy Chief, Narcotics**

**Southern District of Florida**

**99 NE 4th Street**

**Miami, Florida 33132-2111**

**Phone: (305) 961-9281**

**Cell: 786 564-9126**

**Fax: (305) 536-7213**

**From:** Chad Van Cleave [mailto:theonomist@gmail.com]
**Sent:** Monday, September 22, 2014 10:18
**To:** Getchell, Richard (USAFLS)
**Subject:** Re: Oscar Andres

[Quoted text hidden]

**From: Omar Andres** omar@omarandres.com
**Subject:** Please Ryan 5 minutes of your time...
**Date:** April 27, 2015 at 10:22 AM
**To:** Ryan Knerr ryan.w.knerr@usdoj.gov

Dear Ryan,

Hope all is well Ryan. Its Omar Andres the UM football player. It Has been a while since we last spoke. The reason I'm reaching out and writing is to requ
on my brother Oscar's sentence reduction case as you may have been informed my father passed away and will not have any use for this request. On the oth
needs you to come forward and confirm our initial and only agreement which was to work for a sentence reduction on my brothers behalf and I did do my p
accountable on my end of the our deal and conducted myself with honesty and integrity towards you guys and the DEA agency. I was on call and at your im
simple question I ask. Did you and the DEA benefit from the cases I created for your agency ? YES and we can agree all this is accurate. "You know that I
sentence to be reduced. You told me you knew that, and you accepted my help for that purpose. Now I understand that the Government is saying that I was
for my work. That is not true, and you know it is not true. You have to speak up about this. You know this is not right. Please speak up about it. Please te

I would like to refresh or remind you in regards to how we met and some of the events that took place while I was working with you the DEA.

Remember Ryan, I was not working with the DEA because I had done anything wrong or had committed or was arrested for any crimes. Originally I did no
that we were able to obtain such a request as to be able work with the DEA until Henry Mann girlfriend Angie informed us she had previously worked with
was helped by your agency with reducing Henry Mann 6 life sentence through her cooperation. Henry was in prison with my brother Oscar and that's how
Ryan. I sincerely believe you can recall from our initial meeting and on several instances where I expressed ;that all I wanted and was working for my dad a
sentence reduction before my dad passed away due to his health issues. I also signed a paper in your office where it clearly stated I was NOT working for m
time reduction on Oscar Andres and Angel Andres sentence reduction. I'm sure you recall that my dad was ill and that Time was of an essence for us , as w
right actions to be put into play and my dad passed away in prison.

I understand you were a newly hired agent at the time these cases were conducted and may have had some of the process hindered by misinformed informa
with the same tenacity that the cases were made in order to have the proper individuals credit us for our cooperation in helping the DEA benefit . Please Ry
thing and come forward and confirm, what you and I both know to be the truth that I worked with you guys THE DEA IN RETURN for your help in my br
reduction. That famous quote "the truth shall set you free " is called upon in this case and applies here. Ryan you coming forward and confirming our origin
my brothers Oscar Andres freedom.

Ryan I just want to take you back and refresh your memory to that last case and phone conversation we had.

As I recall Several successful cases later , as matter of fact on the last case we worked together I will never forget you called me and told me to call my att
done was enough to help my dad and brother. Also I remember you telling me how your fellow agents were mocking you about the information that I had g
had the last laugh as it was accurate and you had another successful case added to your resume. Now I come to you and ask you to look deep within yoursel
Thank you Ryan for taking the time to read this email and look forward to hearing from you.

**My brother does not have a life sentence. The        help would be for this sentence below.**

# Federal Bureau of Prisons

Correctional Excellence · Respect · Integrity

| Home | About Us | Inmates | Locations | Jobs | Business | Resou |

# Find an inmate.

Locate the whereabouts of a federal inmate incarcerated from 1982 to the present.

**Find By Number**    **Find By Name**

| First | Middle | Last | Race | Age |
|-------|--------|------|------|-----|
| Oscar |        | Andres | ▼ | |

## **1** Result for search **Oscar Andres**

🗑 Clear Form



## OSCAR ANDRES

Register Number: 50618-004

Age:   42
Race:  White
Sex:   Male

**Located at:** Butner Medium I FCI

**Release Date:** 12/06/2028

**Related Links**

Facility Informatic
Call or email
Send mail/packa
Send money
Visit
Voice a concern

About the inmate locator & record availability ›

Sincerely ,

Omar Andres

Osrae Andres 50618-004
Federal Correctional Complex
Med # 1
P.O. Box 1000
Butner, NC 27509

U.S. Marshal Service
Post 5
Contents X-RAYED

CERTIFIED MAIL

7012 2920 0000 5386 4003




U.S. POSTAGE PAID
MIAMI, FL
MAY 11, '15
AMOUNT
$5.12



⇔50618-004⇔
United St District Court
Hon. James I. Cohn
299 E Broward BLVD
room 203
FORT Lauderdale, FL 33301
United States